Burton **VIESTENZ**, Plaintiff-Appellee,

v.

**FLEMING COMPANIES, INC.,**
Defendant-Appellant.

No. 80–1559.

United States Court of Appeals,
Tenth Circuit.

June 22, 1982.

Certiorari Denied Nov. 1, 1982.
See 103 S.Ct. 303.

Ronald W. Fairchild, Topeka, Kan. (Charles D. McAtee, Topeka, Kan., with him on the briefs) of Eidson, Lewis, Porter & Haynes, Topeka, Kan., for defendant-appellant.

Dan L. Wulz, Topeka, Kan. (Frederick J. Patton, II, of Jones, Schroer, Rice, Bryan & Lykins, Chartered, Topeka, Kan., on the brief), for plaintiff-appellee.

Before McWILLIAMS and McKAY, Circuit Judges, and BRIMMER,* District Judge.

\* Honorable Clarence A. Brimmer, Jr., United States District Judge for the District of Wyo-

McKAY, Circuit Judge.

Appellee Burton Viestenz, a resident of Missouri, was formerly employed at a Missouri supermarket owned by appellant Fleming Companies, Inc. (Fleming), a Kansas corporation. Based on reports that it had received, Fleming, in 1975, suspected that Mr. Viestenz had been stealing merchandise from the store on a regular basis. At that time, Sentinel Security Services, Inc. (Sentinel) was under contract to Fleming for the provision of investigative services. Sentinel is a corporate entity separate from Fleming which performs such services in many states for various clients, including Fleming.

In February 1975, at Fleming's request, a representative of Sentinel came to the supermarket where Mr. Viestenz worked to interview him concerning the theft charges. The interview lasted 25 or 30 minutes. Record, vol. 3, at 101. At the conclusion of the interview, Mr. Viestenz made a handwritten statement admitting his theft of merchandise from the store. In the statement itself, he acknowledged that he was giving the statement voluntarily, without threat or promise, and that he understood that he could consult with an attorney. Record, vol. 1, at 329.

The interview was conducted in an upstairs area of the store. Only Mr. Viestenz and Sentinel's representative were present, but Mr. Viestenz was aware that he was entitled to have a union representative present, and Mr. Viestenz was not restrained or otherwise compelled to participate in the interview. Record, vol. 3, at 110. Since Sentinel's representative died before Mr. Viestenz repudiated his statement and filed this action, we have only Mr. Viestenz' testimony as to what transpired at the interview. Mr. Viestenz testified that Sentinel's representative at times · spoke loudly to him; at other times, he spoke softly. He did not threaten bodily harm. Record, vol. 3, at 61, 64. However,

ming, sitting by designation.

he did engage in conduct which Mr. Viestenz characterized at trial as threatening. Specifically, he advised Mr. Viestenz of the charges and informed him that he could lose his job and be blackballed at the union if he did not admit the theft. He also stated that he could obtain a court order for a polygraph test if Mr. Viestenz would not cooperate. Record, vol. 3, at 104–05. After the interview, Mr. Viestenz returned to work. He made restitution to Fleming in the amount of the admitted theft, and he was discharged the following day after working part of his shift.

During the trial of this action, Mr. Viestenz testified that he was so scared after he had been fired that he was unable to sleep at night. He wondered where he was going to get money to buy groceries for his family. He hurt inside. His stomach rolled, his legs hurt, and he was so nervous that his heart was overworked. Record, vol. 3, at 76–77. He also testified that he had not been advised that he could consult with an attorney and that he gave the statement because he did not want to lose his job. Record, vol. 3, at 61–62.

Mr. Viestenz chose not to pursue the mandatory grievance procedure set forth in the collective bargaining agreement under which he worked. *See* Record, vol. 1, at 341–42. Subsequently, members of his union, Amalgamated Meat Cutters No. 576, went on strike to protest that Mr. Viestenz had been discharged, not because of theft, but because he previously had reported Fleming for violations of its union contract. A Missouri state court, noting that the collective bargaining agreement under which Mr. Viestenz worked provided a grievance procedure as the exclusive means for resolving his complaint, enjoined the strike. Record, vol. 1, at 141–45.

Seventeen months after the state court's order was issued, Mr. Viestenz brought this diversity action against Fleming in the United States District Court for the District of Kansas. His complaint set forth two causes of action—wrongful discharge and intentional infliction of emotional distress (the tort of outrage). He alleged that he was entitled to recover for loss of earnings and emotional suffering.

The federal district court did not permit Mr. Viestenz to pursue his wrongful discharge claim. To the extent that the claim was based on contract violation, its resolution was governed by the general rule that an aggrieved employee "must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). Nor did any exception to this rule apply: the procedure set forth in the agreement was exclusive, *id.* at 657–58, 85 S.Ct. at 618–619; Fleming's conduct did not constitute a repudiation of the contract's provisions, *see Drake Bakeries Inc. v. Bakery Workers*, 370 U.S. 254, 262–63, 82 S.Ct. 1346, 1351, 8 L.Ed.2d 474 (1962); there was no allegation that the union failed to represent Mr. Viestenz fairly, *see Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); and Mr. Viestenz did not allege that his failure to avail himself of the grievance procedures was based on any unwillingness of Fleming to arbitrate the dispute. *See Glover v. St. Louis-San Francisco Railway*, 393 U.S. 324, 330–31, 89 S.Ct. 548, 551–552, 21 L.Ed.2d 519 (1969).

■ Only the collective bargaining agreement prevented Fleming from terminating Mr. Viestenz at will. *Andrews v. Louisville & Nashville Railroad*, 406 U.S. 320, 324, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972). Accordingly, any claim of wrongful discharge in violation of the agreement must be brought on the basis of the agreement. *Id.*

■ However, even an employee who is terminable at will may have a tort cause of action for wrongful discharge if a significant public interest is involved. Although Mr. Viestenz' claim that he was discharged because of his union activities involves such an interest, it is also an allegation of an unfair labor practice in violation of § 8(a) of the National Labor Relations Act, 29 U.S.C. § 158(a). *Dayton Tire & Rubber Co. v. NLRB*, 591 F.2d 566 (10th Cir. 1979). In this area, federal labor law preempts state

law, and the jurisdiction of the National Labor Relations Board is exclusive. "When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). This preemption doctrine is premised on Congress' desire to avoid conflicting rules of substantive law and remedy, thereby ensuring a consistent national labor policy. *Id.* at 242, 79 S.Ct. at 778.

■ We conclude that the federal district court correctly dismissed Mr. Viestenz' wrongful discharge claim, whether construed to sound in contract or in tort.

The district court, however, did permit Mr. Viestenz' action to proceed on his tort claim of outrage. A jury trial was held, and a verdict was returned in favor of Mr. Viestenz for $5000 actual damages and $50,-000 punitive damages. Fleming filed a motion for judgment notwithstanding the verdict, a new trial, or, in the alternative, remittitur. The district court denied Fleming's motion for judgment n. o. v., but, noting that the award given by the jury was grossly excessive and not supported by the evidence, granted Fleming's motion for a new trial, unless Mr. Viestenz consented to a remittitur of $2500 actual damages and $25,000 punitive damages. Record, vol. 1, at 296. Mr. Viestenz accepted the reduced award, and an appropriate order was entered.

■ Fleming appeals from this final order of the district court, pursuant to 28 U.S.C. § 1291, and urges this court to reverse the judgment entered against it.[1] Among the several grounds for reversal advanced by Fleming is that Mr. Viestenz

actually has artfully characterized an unfair labor practice charge as a tort action for outrage and thus this claim, as well as his claim for wrongful discharge, is subject to the preemption doctrine stated in the *Garmon* rule. Fleming moved for dismissal on this ground, but the district court denied its motion. Record, vol. 1, at 176–79.

In denying Fleming's motion to dismiss, the district court relied upon an exception to the *Garmon* rule set forth in *Farmer v. Carpenters*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). In *Farmer*, a member and former officer of a union brought an action against the union, charging it with "outrageous conduct, threats, intimidation, and words" causing him "grievous mental and emotional distress as well as great physical damage." *Id.* at 301, 97 S.Ct. at 1064. This challenged conduct was part of a campaign of personal abuse and harassment, which included employment referral discrimination and was intended to punish him for complaints he made against the union local to higher union officials.

■ Although this conduct, occurring in the context of employment discrimination, might form the basis for an unfair labor practice charge, the Court held that the union member's claim of intentional infliction of emotional distress was not necessarily preempted by federal law, if the state had a substantial interest in regulating the challenged conduct, and its regulation did not threaten undue interference with the federal regulatory scheme. *Id.* at 302, 97 S.Ct. at 1064.

To recover for this tort, state law required the union member to prove "that the defendants intentionally and by outrageous conduct had caused him to suffer severe emotional distress." *Id.* at 293–94, 97 S.Ct. at 1059–1060. "Severe" in this context meant

1. Mr. Viestenz argues for dismissal of this appeal on the theory that Fleming is estopped from maintaining it because the district court granted Fleming's alternative motion for remittitur. While it is clear that a *plaintiff* in federal court may not appeal from a remittitur order he has accepted, *Donovan v. Penn Shipping*

*Co.*, 429 U.S. 648, 650, 97 S.Ct. 835, 837, 51 L.Ed.2d 112 (1977), it is equally clear that a *defendant* against whom judgment is entered may maintain an appeal after requesting and receiving a remittitur in the trial court. *See Westerman v. Sears, Roebuck & Co.*, 577 F.2d 873 (5th Cir. 1978).

substantial or enduring, as distinguished from trivial or transitory. It must be of such substantial quantity or enduring quality that *no reasonable man in a civilized society should be expected to endure it.* Liability does not extend to mere insults, indignities, annoyances, petty or other trivialities.

*Id.* at 294, 97 S.Ct. at 1060 (emphasis added). The Court concluded that the state indeed had a substantial interest in regulating conduct of such kind "that no reasonable man in a civilized society should be expected to endure it." *Id.* at 302, 97 S.Ct. at 1064.

The Court reasoned that while "[t]he occurrence of the abusive conduct, with which the state tort action is concerned, in such a context of federally prohibited discrimination suggests a potential for interference with the federal scheme of regulation," *id.* at 304, 97 S.Ct. at 1065, the concerns of the federal scheme and the state tort law are distinct. The NLRB would focus its proceeding "on whether the statements or conduct on the part of Union officials discriminated or threatened discrimination against him in employment referrals," and would not be concerned with whether the union's conduct or statements also caused him severe emotional distress and physical injury. *Id.* "Conversely, the state-court tort action [could] be adjudicated without resolution of the 'merits' of the underlying labor dispute." *Id.* Consequently, the potential for interference with the federal scheme did not outweigh the legitimate and substantial state interest in protecting its citizens from this kind of conduct. *Id.*

The Court, however, emphasized several limitations on this exception to the general preemption rule. Concurrent jurisdiction would not be permitted where the state interest was not substantial[2] or where emotional distress and anxiety resulted from actual or threatened loss of employment itself, rather than from the particularly abusive manner in which the employment loss was accomplished or threatened.[3] If either of these two conditions exists, then the potential for undue interference with the federal regulatory scheme is intolerable. *Id.* at 305–06, 97 S.Ct. at 1066. The Court suggested strongly that, in the context of a labor dispute, a state's interest in regulating conduct less "outrageous" than that challenged in *Farmer* would not be sufficiently substantial to permit concurrent jurisdiction. *Id.*

Since Mr. Viestenz' state tort claim is based upon conduct occurring in the context of an unfair labor practice, it must satisfy the requirements of the *Farmer* exception to the *Garmon* preemption rule to be actionable under federal court diversity jurisdiction. The conduct must be sufficiently "outrageous," and the harm suffered by Mr. Viestenz must have resulted from the manner in which he was interviewed or discharged, rather than from the fact of discharge itself. We conclude that Mr. Vies-

2. Our decision rests in part on our understanding that [the state] law permits recovery only for emotional distress sustained as a result of "outrageous" conduct. The potential for undue interference with federal regulation would be intolerable if state tort recoveries could be based on the type of robust language and clash of strong personalities that may be commonplace in various labor contexts.
*Farmer v. Carpenters*, 430 U.S. 290, 305–06, 97 S.Ct. 1056, 1066, 51 L.Ed.2d 338 (1977).

3. [W]e reiterate that concurrent state-court jurisdiction cannot be permitted where there is a realistic threat of interference with the federal regulatory scheme. Union discrimination in employment opportunities cannot itself form the underlying "outrageous" conduct on which the state-court tort action is

based; to hold otherwise would undermine the pre-emption principle. Nor can threats of such discrimination suffice to sustain state-court jurisdiction. It may well be that the threat, or actuality, of employment discrimination will cause a union member considerable emotional distress and anxiety. But something more is required before concurrent state-court jurisdiction can be permitted. Simply stated, it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself.
*Farmer v. Carpenters*, 430 U.S. 290, 305, 97 S.Ct. 1056, 1066, 51 L.Ed.2d 338 (1977) (note omitted).

tenz' claim fails to satisfy either of these requirements.

Relying upon Mr. Viestenz' account of the interview (as we must, since we have no other), and drawing from his account every inference favorable to him, it is clear to us that the harm of which he complains resulted from the fact of his discharge, rather than from any improper conduct of Sentinel's representative to which he was subjected. Mr. Viestenz testified that his physical and emotional suffering occurred after he had been fired and related to his concern with providing for his family. Record, vol. 3, at 75–78. The harm for which Mr. Viestenz seeks recovery resulted from his discharge, the propriety of which is within the exclusive jurisdiction of the NLRB to determine.[4]

Even if we assume that the harm suffered by Mr. Viestenz resulted from the conduct of Sentinel's representative rather than from the fact of discharge, the conduct alleged simply is not sufficiently outrageous to justify the potential for undue interference with the federal regulatory scheme. Mr. Viestenz claims that Sentinel's representative made unjustified threats to have him discharged, to blackball him at the un-

ion, and to subject him to a court-ordered polygraph examination. The state's interest in regulating this kind of conduct is not nearly as substantial as the interest of a state in regulating conduct of such kind "that no reasonable man in a civilized society should be expected to endure it." While we do not condone the behavior of Sentinel's representative, we do not think the state's interest in regulating such behavior is substantial enough to permit concurrent jurisdiction. We conclude that Mr. Viestenz' claim does not fall within the *Farmer* exception and that permitting him to recover for these damages in federal court would constitute an intolerable interference with the federal regulatory scheme.

Accordingly, we hold that the district court lacked jurisdiction of this action and erred in denying Fleming's motion to dismiss on that ground. Because we have decided this case on jurisdictional grounds, it is unnecessary for us to consider Fleming's remaining arguments.[5]

The judgment of the district court is hereby reversed, and the case is remanded with directions to dismiss for want of jurisdiction.

---

4. In this regard, our treatment of *Farmer* is similar to that of the Ninth Circuit in *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367 (9th Cir.), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). Magnuson was discharged from his employment as a train dispatcher for his alleged negligence in causing a collision of two trains. He claimed that he was the victim of a conspiracy among railroad personnel, including supervisory personnel, investigators, and hearing officers, to conceal the fact that railroad negligence actually caused the accident. He argued that the gist of his action was tortious infliction of emotional distress, rather than wrongful discharge, and, accordingly, was within the *Farmer* exception.

The Ninth Circuit did not agree. The damages which Mr. Magnuson claimed flowed from his wrongful discharge, rather than from the conduct of the alleged conspirators.

> Every employee who believes he has a legitimate grievance will doubtless have some emotional anguish occasioned by his belief that he has been wronged. Artful pleading cannot conceal the reality that the gravamen of the complaint is wrongful discharge. If the pleading of emotional injury permitted aggrieved employees to avoid the impact of [federal law], the congressional purpose of

> providing a comprehensive federal scheme for the settlement of employer-employee disputes in the railroad industry, without resort to the courts, would be thwarted.

*Id.* at 1369. Although Mr. Magnuson's dispute grew out of an employment relationship under the Railway Labor Act, 45 U.S.C. §§ 151–188, the specific preemption principle at issue here is the same. In the context of protected labor activity, a state tort is actionable only if the harm is a function of the "particularly abusive manner" in which a discharge is accomplished, rather than a function of the discharge itself. *Farmer v. Carpenters*, 430 U.S. 290, 305, 97 S.Ct. 1056, 1066, 51 L.Ed.2d 338 (1977).

5. Fleming urges reversal on the additional grounds that: Sentinel's representative was an independent contractor, not an employee or agent of Fleming, and that Fleming was not responsible under law for his conduct; the evidence was insufficient as a matter of law to establish a claim for the tort of outrage; and the district court erred in denying certain of Fleming's motions. In view of our resolution of the preemption issue, we find it unnecessary to reach these questions.