(679 P.2d 746)
No. 55,724

Don Collins, *Appellant,* v. MBPXL Corporation and Gene Eilerts, *Appellees.*

 Opinion filed March 29, 1984. 

*Kelly W. Johnston,* of Johnston & Johnston, P.A., of Wichita, for the appellant.
*Robert D. Overman,* of Martin, Churchill & Overman, for the appellees.

Before FOTH, C.J., SWINEHART and MEYER, JJ.

FOTH, C.J.: Plaintiff Don Collins appeals from the dismissal of his tort claim for lack of jurisdiction. The trial court found plaintiff's claim to be in essence one of wrongful discharge, not judicially cognizable under the facts of this case because of the provisions of the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.* (1976). We agree and affirm.

Plaintiff was an employee of defendant MBPXL Corporation, a meat packer engaged in interstate commerce. His employment was covered by a collective bargaining agreement which provided a four-step grievance procedure culminating in binding arbitration. On May 3, 1980, plaintiff injured his back in a nonwork-related vehicle accident and was unable to work for almost a year. According to plaintiff, MBPXL's personnel director assured him that his job was secure for as long as he had to be away from work. This was in spite of the fact that the collective bargaining agreement specified that an injured employee's seniority would be preserved for just six months unless there was an extension granted through mutual agreement. During plaintiff's disability, he reported frequently to MBPXL to inform it of the progress of his recovery and to have insurance claims verified. In late April, 1981, he received permission from his doctor to return to work but just before he reported for work he received what purported to be a termination of employment effective on December 22, 1980. The defendant company asserts that this termination was in fact processed on December 22, but plaintiff produced the affidavit of one of the defendant's clerks who stated that defendant Gene Eilerts, plaintiff's supervisor, had her type the termination in late April or early May, 1981, and backdate it to December. In mid-May plaintiff was rehired on a temporary basis and in July was hired on a permanent basis at a higher rate of pay than he received in his original job.

Plaintiff filed a grievance under the collective bargaining

agreement on June 5, 1981, which ended at step three of the procedure when the union accepted the company's position that plaintiff had been terminated in accordance with the collective bargaining agreement. The union did not submit the grievance to the fourth (and final) step—submission to a mutually agreed-upon impartial arbitrator. The time for submission to arbitration has long since passed. Plaintiff did not request the union to pursue arbitration and has pressed no claim against the union charging inadequate or unfair representation.

Plaintiff also filed a charge with the National Labor Relations Board on August 13, 1981. In September the Regional Director of the Board informed him that he would not issue a complaint in the matter because he found no allegation of any unfair labor practice. Although advised of his right to do so and furnished the appropriate form, plaintiff did not appeal this decision to the NLRB General Counsel.

On May 26, 1982, plaintiff filed this suit naming the company and supervisor Eilerts as defendants. The petition prayed for compensatory and punitive damages, alleging loss of seniority, lost wages and vacation time, and that he had been embarrassed, humiliated, ridiculed, angered and emotionally upset. He alleged a right to recover "under any or all of the following theories: fraud, outrage, gross and wanton conduct, negligence, deceit, promissory estoppel, violation of public policy, bad faith, abuse of process and breach of contract." In January, 1983, defendants moved for dismissal on the ground that the district court lacked jurisdiction. The trial court granted the motion to dismiss, finding that "[p]laintiff's claims are based on the labor contract and have no basis outside of the labor contract."

On appeal plaintiff has abandoned any claim for breach of the collective bargaining agreement, and most of his other theories of recovery. He limits his appeal to tort claims (fraud and outrage) arising out of the manner in which he was discharged. He complains in particular about the defendants' behavior in allegedly backdating his dismissal.

Plaintiff's abandonment of his "wrongful discharge" claim is well advised. Absent the collective bargaining agreement he would have been an employee at will subject to discharge with or without cause. *Mildfelt v. Lair*, 221 Kan. 557, 561 P.2d 805 (1977). Because of the existence of the collective bargaining

agreement his rights and remedies are a matter of federal substantive law governed by the Labor Management Relations Act. *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 1 L.Ed.2d 972, 77 S.Ct. 912 (1957); *Smith v. Evening News Assn.,* 371 U.S. 195, 9 L.Ed.2d 246, 83 S.Ct. 267 (1962). To the extent his claim was based on alleged breach of the agreement he was required to exhaust its grievance procedures, including arbitration. *Republic Steel v. Maddox,* 379 U.S. 650, 13 L.Ed.2d 580, 85 S.Ct. 614 (1965). And *cf., Andrews v. Louisville & Nashville R. Co.,* 406 U.S. 320, 32 L.Ed.2d 95, 92 S.Ct. 1562 (1972). If the claim were cast in terms of an unfair labor practice, exclusive jurisdiction lay with the NLRB. *San Diego Unions v. Garmon,* 359 U.S. 236, 3 L.Ed.2d 775, 79 S.Ct. 773 (1959); *Inland Industries, Inc. v. Teamsters & Chauffeurs Local Union,* 209 Kan. 349, 496 P.2d 1327 (1972). Under either theory the district court had no jurisdiction of a claim for damages flowing from the fact of plaintiff's discharge.

Plaintiff, however, insists that his tort claims may stand separate and apart from his claims under the collective bargaining agreement. To answer this contention we find guiding principles in two federal cases. The first is *Farmer v. Carpenters,* 430 U.S. 290, 51 L.Ed.2d 338, 97 S.Ct. 1056 (1977). In that case a former union member sued the union in a California state court for emotional distress causing bodily injury on an outrage theory. He claimed a pattern of personal abuse and harassment in retaliation for his complaints about the local to higher union officials. In other counts he also charged discrimination in referrals from the hiring hall and other breaches of the union's collective bargaining agreement. The contractual claims were dismissed at the trial level on the basis of federal preemption, but the outrage claim went to trial and judgment for the plaintiff. The state appellate court reversed, finding the tort claim was also preempted.

The United States Supreme Court disagreed. It found a pattern in its prior cases of exceptions to the preemption rule of *Garmon* for torts which the states had a strong interest in vindicating and where such state action would not interfere with the effective administration of national labor policy. Specifically, it noted malicious libel in *Linn v. Plant Guard Workers,* 383 U.S. 53, 15 L.Ed.2d 582, 86 S.Ct. 657 (1966); potentially violent mass pick-

eting in *Automobile Workers v. Russell,* 356 U.S. 634, 2 L.Ed.2d 1030, 78 S.Ct. 932 (1958); and wrongful expulsion from union membership in *Machinists v. Gonzales,* 356 U.S. 617, 2 L.Ed.2d 1018, 78 S.Ct. 923 (1958). To this list *Farmer* added the tort of outrage.

In so doing the court carefully appended important qualifications. First, it said "it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself." 430 U.S. at 305. In our case, this translates into a requirement that plaintiff's damages flow from the *manner* in which he was discharged, and not from the fact of the discharge itself.

Second, the court emphasized that "[o]ur decision rests in part on our understanding that California law permits recovery only for emotional distress sustained as a result of 'outrageous' conduct. The potential for undue interference with federal regulation would be intolerable if state tort recoveries could be based on the type of robust language and clash of strong personalities that may be commonplace in various labor contexts." 430 U.S. at 305-6. Outrageous conduct was understood to be conduct by which one intentionally causes severe emotional distress, as that term had been defined by the trial court to mean:

" 'substantial or enduring, as distinguished from trivial or transitory. It must be of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it. Liability does not extend to mere insults, indignities, annoyances, petty or other trivialities.' " 430 U.S. at 294.

This accords with the Kansas definition of the tort. See, *e.g., Roberts v. Saylor,* 230 Kan. 289, 293, 637 P.2d 1175 (1981); *Dotson v. McLaughlin,* 216 Kan. 201, 210, 531 P.2d 1 (1975).

In *Farmer* the first qualification was dispositive. Because the trial court had not clearly delineated for the jury the line between damages resulting from "outrageous conduct" and those stemming from job discrimination the verdict for plaintiff could not stand.

The second case which is instructive on the issue before us is *Viestenz v. Fleming Companies, Inc.,* 681 F.2d 699 (10th Cir.), *cert. denied* 459 U.S. 972 (1982). The plaintiff there was a

former employee and union member who sought to combine in one diversity suit an action for wrongful discharge with one for the tort of outrage. The outrage claim was based on a 25 to 30 minute interview with a company security officer in which plaintiff was accused of a series of thefts from his employer, and which ended with a handwritten confession by the plaintiff.

The trial court dismissed the wrongful discharge claim because of the plaintiff's failure to exhaust his contractual grievance rights, and this ruling was upheld on appeal. However, the trial court permitted a trial on the outrage claim, based on the exception to the preemption doctrine found in *Farmer v. Carpenters*, 430 U.S. 290. The plaintiff testified that after his firing he was so scared he was unable to sleep and that he wondered how he could buy groceries for his family. He hurt inside, his stomach rolled, his legs hurt, and he was so nervous that his heart was overworked. The result was a judgment for the plaintiff.

The Tenth Circuit reversed. After analyzing *Farmer* the court concluded:

"Since Mr. Viestenz' state tort claim is based upon conduct occurring in the context of an unfair labor practice, it must satisfy the requirements of the *Farmer* exception to the *Garmon* preemption rule to be actionable under federal court diversity jurisdiction. The conduct must be sufficiently 'outrageous,' and the harm suffered by Mr. Viestenz must have resulted from the manner in which he was interviewed or discharged, rather than from the fact of discharge itself. We conclude that Mr. Viestenz' claim fails to satisfy either of these requirements.

"Relying upon Mr. Viestenz' account of the interview (as we must, since we have no other), and drawing from his account every inference favorable to him, it is clear to us that the harm of which he complains resulted from the fact of his discharge, rather than from any improper conduct of Sentinel's representative to which he was subjected. Mr. Viestenz testified that his physical and emotional suffering occurred after he had been fired and related to his concern with providing for his family. Record, vol. 3, at 75-78. The harm for which Mr. Viestenz seeks recovery resulted from his discharge, the propriety of which is within the exclusive jurisdiction of the NLRB to determine.

"Even if we assume that the harm suffered by Mr. Viestenz resulted from the conduct of Sentinel's representative rather than from the fact of discharge, the conduct alleged simply is not sufficiently outrageous to justify the potential for undue interference with the federal regulatory scheme. Mr. Viestenz claims that Sentinel's representative made unjustified threats to have him discharged, to blackball him at the union, and to subject him to a court-ordered polygraph examination. The state's interest in regulating this kind of conduct is not nearly as substantial as the interest of a state in regulating conduct of such kind 'that no reasonable man in a civilized society should be expected to endure it.' While we do not condone the behavior of Sentinel's representative, we do not think the

state's interest in regulating such behavior is substantial enough to permit concurrent jurisdiction. We conclude that Mr. Viestenz' claim does not fall within the *Farmer* exception and that permitting him to recover for these damages in federal court would constitute an intolerable interference with the federal regulatory scheme.

"Accordingly, we hold that the district court lacked jurisdiction of this action and erred in denying Fleming's motion to dismiss on that ground." 681 F.2d at 703-4.

From *Viestenz* we learn two things. First, as stated in *Farmer*, in order to avoid preemption the state tort claim must be viable independently of any violation of a collective bargaining agreement. If the claim is outrage, the conduct complained of must be truly outrageous.

Second, in determining jurisdiction the *Viestenz* court found a lack of jurisdiction by examining the plaintiff's testimony relating to his damages and their cause. Thus, in determining jurisdiction of an action where there is a claim of federal preemption the courts look beyond the form of the action to determine its substance. Examination of evidence demonstrating the factual background of plaintiff's claim is proper even though the issue is one of jurisdiction under K.S.A. 60-212(*b*)(1) and not whether there is a claim upon which relief can be granted under K.S.A. 60-212(*b*)(6).

Applying the principles of *Farmer* and *Viestenz* to this case, we examine the record to determine just what caused the damages claimed by plaintiff. Although he asserts that discovery was incomplete, numerous depositions had been taken by the time the trial court ruled on the motion to dismiss, among which was plaintiff's own. By stipulation approved by the trial judge the parties agree plaintiff's deposition was considered by the court in making its ruling.

In it plaintiff was asked what his claim really was. He replied:

"A. Well, my claim is that I was terminated without being notified and I had a legal extension by Gary Williams telling me that not to worry about my job, I had a job when I come back, and it has been a pretty let-down on the thing financial and everything else."

He then elaborated on how he had an agreement to extend his leave of absence, and how his claimed actual damages were based on loss of pay and vacation time.

This much was clearly a claim for wrongful discharge in violation of the collective bargaining agreement, beyond the

jurisdiction of the trial court because of plaintiff's failure to exhaust his contractual remedies.

Later plaintiff was pressed on his claims for embarrassment, humiliation, etc. His response was:

"A. Like I say, just the way things was, I mean terminating me the date I go back to work and just bills that piled up that I needed to pay and planning to have a job when I got back and didn't have one.

"Q. In what way do you claim that you were embarrassed?

"A. Same way, I had bill collectors wanting their money. When they come around, I tell them, well, I got fired and I can't pay you."

From this it appears that his emotional suffering likewise resulted from the simple fact of discharge, and not from the manner of discharge. At best plaintiff could say he was angered by learning of the discharge when he did, and by learning later that the discharge paperwork had been backdated. This cannot be the severe and permanent emotional distress which, if intentionally inflicted, qualifies as the tort of outrage. To our mind plaintiff's outrage claim here is practically indistinguishable from that of the plaintiff in *Viestenz*, and is likewise beyond the jurisdiction of the courts.

Plaintiff also contends he has an independent action in fraud. Although the petition lacks the particularity required by K.S.A. 60-209(b), it does allege repeated assurances that he would have his job back when he could return to work and that his termination was "fraudulently back-dated." What it lacks, and what plaintiff's testimony fails to provide, was any element of detrimental reliance. There is no claim, for example, that plaintiff passed up other job opportunities; he went back to work for MBPXL just two weeks after he received notice of his termination. Likewise, there was no evidence of damages from the claimed fraud other than that quoted above. Again, according to plaintiff's testimony it was being out of a job that caused both the monetary and emotional damage. His fraud claim, like his outrage claim, was simply one aspect of his claim for breach of the labor contract.

We conclude that the trial court was correct in its finding of no jurisdiction.

Affirmed.