**MAGIC CHEF, INC., Plaintiff,**

v.

**INTERNATIONAL MOLDERS & ALLIED WORKERS UNION, et al., Defendants.**

**No. CIV–1–83–198.**

United States District Court,
E.D. Tennessee, S.D.

Aug. 8, 1983.

Denny E. Mobbs, Cleveland, Tenn., for plaintiff.

Thomas F. Phalen, Jr., Kircher & Phalen, Cincinnati, Ohio, Jerry H. Summers, P.C., Chattanooga, Tenn., for defendants.

## OPINION

MILBURN, District Judge.

The plaintiff, Magic Chef, Inc. [hereinafter "Magic Chef"], brought this action in the Circuit Court of Bradley County, Tennessee, alleging that the defendants [here-

inafter "Unions" or "defendants"] initiated a strike of plaintiff's manufacturing facility in Cleveland, Tennessee, and that attendant to this strike, the Unions have "engaged in a systematic pattern of violent activities against the Plaintiff and the Plaintiff's employees, which violate the laws of the State of Tennessee." (Complaint, ¶ II, Court File # 1) The plaintiff further alleges that this violence has caused damage to Magic Chef and has interfered with its economic relations. *Id.* Magic Chef is seeking a total of Fifteen Million Dollars ($15,000,000) in compensatory damages and Five Million Dollars ($5,000,000) in punitive damages.

This action was timely removed to this Court on the defendants' petition. The defendants assert that jurisdiction in this court is proper because the plaintiff's case states a federal question; that is, the case is one "arising under the Constitution, treaties or laws of the United States...." 28 U.S.C. § 1441(b). The plaintiff disputes this assertion, and has filed a motion to remand (Court File # 5), which is now before the Court for decision.[1]

## I. FACTS

None of the relevant facts is in dispute. The plaintiff is a corporation with a manufacturing facility in Cleveland, Tennessee, and is in the business of fabricating ranges and other durable goods. The defendants are the local and international unions representing employees of the plaintiff at plaintiff's plant in Cleveland.

On January 23, 1983, some of the plaintiff's employees struck the Magic Chef plant in Cleveland upon the termination of a collective bargaining agreement after the parties were unable to negotiate a new one. As of this writing, the strike is still in effect. According to the Complaint, the plaintiff and its employees have been the subject of more than five hundred (500) acts of violence perpetrated by the Unions and their members, and that at all times

the wrongdoers were under the control of representatives of the Unions.

The plaintiff's complaint alleges that the actions of the defendants were in violation of Tennessee law, and seeks recovery on that basis.

## II. ISSUE

The defendants argue that even though the plaintiff has admittedly stated only state law causes of action, this action was properly removed under 28 U.S.C. § 1441. The relevant parts of this statute provide:

(a) Except as otherwise expressly provided by Acts of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

The issue presented then is whether this action arises under federal law, thus making removal proper. If, of course, the action does not arise under federal law, the action must be remanded to the state court. 28 U.S.C. § 1447(c).

## III. DISCUSSION

### A. DEFENDANTS' ARGUMENTS:

The defendants raise essentially two arguments in support of removal jurisdiction. First, they contend that notwithstanding the plaintiff's characterization of its action as grounded solely in state law, the plaintiff's claims are essentially federal in char-

---

1. There are several other motions pending in this case. In view of the disposition of plain-

tiff's motion to remand, however, it is unnecessary to decide those motions.

acter. This argument is based upon the Congress' allegedly all-encompassing regulation of labor relations under the National Labor Relations Act, as amended, 29 U.S.C. §§ 141–169, supplemented by the Racketeer Influenced and Corrupt Organizations Act (RICO). 18 U.S.C. §§ 1961–1968.[2] Because, say the defendants, the plaintiff's claims are essentially federal in nature (as evidenced by the NLRA and RICO), the plaintiff may not deprive the defendants of their right to a federal forum through artfully pleading only state claims. See *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103, 108 n. 2 (1981).

The defendants' second argument is similar: the intent of Congress in enacting the NLRA and RICO was to create a national body of law regarding labor relations, thus pre-empting state authority in this area.

It may be assumed that the plaintiff might have stated a cause of action under RICO. Section 1964(c) of Title 18 provides:

Any person injured in his business or property by reason of a violation of Section 1962 of this chapter may sue therefor in any appropriate United States District Court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.[3]

The plaintiff did not choose to state a civil RICO action, choosing instead to rely solely upon state law. The Court must determine, therefore, whether this action was properly removed when the plaintiff has stated no federal cause of action.

### B. REMOVAL JURISDICTION:

As stated above, the question in this case is whether the suit is one "arising under"

---

**2.** RICO was passed as Title IX of the Organized Crime Control Act of 1970, Pub.L. 91–452; 84 Stat. 922.

**3.** The language of this subsection raises an issue not addressed by the parties. It may be that § 1964(c) vests exclusive jurisdiction of civil RICO actions in the federal courts. If this be so, then even if the plaintiff's state action was pre-empted by RICO, the action would not be removable. This is because the federal court's jurisdiction on removal is merely derivative of the state court's jurisdiction. If the statute gives

the laws of the United States. 28 U.S.C. §§ 1331 and 1441(b). As stated by Justice Brennan in *Franchise Tax Board v. Construction Laborers Vacation Trust,* —— U.S. ——, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), "The most familiar definition of the statutory 'arising under' limitation is Justice Holmes' statement, 'a suit arises under the law that creates the cause of action.'" *Id.,* at 2846, quoting *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). Others have suggested that a case arises under federal law "if in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law." P. Bator, P. Mishkin, D. Shapiro and H. Wechsler, *Hart & Wechsler's The Federal Courts and the Federal System* 889 (2d ed. 1973).

The determination of whether a case arises under federal law is limited by what is known as the "well-pleaded complaint" rule:

[W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.

*Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 724–725, 58 L.Ed. 1218 (1914). This means that, as the law has been developed, "For better or worse, under the

exclusive jurisdiction to the federal court, then the state court was without jurisdiction, and the federal court could not acquire jurisdiction by the device of removal, and the action would have to be dismissed. *Lambert Run Coal Co. v. Baltimore & Ohio R. Co.,* 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922); *Bancohio Corp. v. Fox,* 516 F.2d 29, 31 (6th Cir.1975). The issue admits of enough doubt, however, that the Court declines to dispose of the case on this issue.

present statutory scheme as it has existed since 1887, a defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." *Franchise Tax Board*, 103 S.Ct. at 2847 (emphasis in original). As a general rule, then, a case does not arise under federal law (and is thus not removable) unless "the vindication of a right under state law necessarily turn[s] on some construction of federal law," *id.*, 103 S.Ct. at 2846; *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), and this must be established by the plaintiff's complaint. See *Gully v. First National Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

■ As noted earlier, the plaintiff might have stated a cause of action under RICO, but chose not to do so. The fact that a plaintiff has both state and federal remedies does not mean that he must state his federal claim. It has long been held that "the party who brings the suit is master to decide what law he will rely upon." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913); *La Chemise Lacoste v. Alligator Co.*, 506 F.2d 339 (3rd Cir.1974), *cert. denied*, 421 U.S. 937, 95 S.Ct. 1666, 44 L.Ed.2d 94 (1975). As stated in *Franchise Tax Board, supra*, however, "[A] plaintiff may not defeat removal by omitting to

plead necessary federal questions in a complaint." *Id.*, 103 S.Ct. at 2853.

## C. PRE–EMPTION:

As previously stated, the defendant takes two tracks in arguing that the plaintiff has failed to plead a necessary federal question. The Court is of the opinion, however, that the only one relevant here is that plaintiff's state law claim is pre-empted by RICO.[4] See *Avco Corp. v. Aero Lodge No. 735*, 376 F.2d 337, 340 (6th Cir.1967), *aff'd*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126, *reh'g denied*, 391 U.S. 929, 88 S.Ct. 1801, 20 L.Ed.2d 670 (1968).

■ The two seminal cases in the labor law pre-emption field are *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) and *Machinists v. Wisconsin Employment Relations Commission*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). In *Garmon*, Justice Frankfurter set out the principles that have since been unaltered in this field. First, "If the [National Labor Relations] Board decides, subject to appropriate federal judicial review, that conduct is protected by § 7 [29 U.S.C. § 157], or prohibited by § 8 [29 U.S.C. § 158], then the matter is at an end, and the States are ousted of all jurisdiction." *Id.* 359 U.S. at 245, 79 S.Ct. at 779, 3 L.Ed.2d at 783.[5] Since the Board has made no determination in this

---

**4.** Defendants' other argument, that the plaintiff's claims are in reality federal in nature, is based primarily upon *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). In that case, the Court held that the plaintiff's state law case was properly removed because "some of the claims had a sufficient federal character to support removal." *Id.* at 397 n. 2, 101 S.Ct. at 2427 n. 2, 69 L.Ed.2d at 108 n. 2. One of the authorities upon which the Court relied has recently attempted to explain this holding (after stating that "several aspects of the Court's statement about removal ... are difficult to understand."), 14 C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure*, § 3722 at 202 (1983) Pocket Part:

In brief, the Court's only intention in its footnote may have been a narrow one: to tip the balance in favor of defendant's right to a federal forum and against plaintiff's right to be master of his claim in antitrust actions when the plaintiff already had availed himself of a federal forum and when his state claims

as removed would be res judicata from the earlier federal decisions. The Court's holding in the case, which affirmed a broad and strict standard for res judicata, seems to lend weight to this view.

*Id.* at 203. Whatever the import of *Moitie* on removal jurisdiction may have been, the Court is of the opinion that *Franchise Tax Board* supersedes it as the most recent Supreme Court authority on the issue. In fact, the opinion in *Franchise Tax Board*, written by Justice Brennan, who dissented from the jurisdiction holding in *Moitie*, does not cite the *Moitie* case at all.

**5.** As an illustration of the practical effect of this rule, see the discussion of *Wiggins & Co. v. Retail Clerks Local 1557* (Tenn.Ct.App., Mar. 28, 1979), *rev'd*, 595 S.W.2d 802 (Tenn.1980) in Comment, *Labor Law Preemption After Sears—Problems in Concurrent Jurisdiction—Wiggins & Co. v. Retail Clerks Local 1557*, 47 Tenn.L.Rev. 373 (1980).

case, this first rule of *Garmon* is inapplicable. The second rule of *Garmon* is relevant here:

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield.

*Id.*, 359 U.S. at 244, 79 S.Ct. at 779, 3 L.Ed.2d at 782. While it is clear that the acts of violence alleged would not be protected under Section 7, they might well be prohibited by Section 8 as unfair labor practices. This does not mean, however, that the state action is pre-empted. As was stated in *Garmon:*

> Due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act [citation omitted], or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act.

*Id.* at 243–44, 79 S.Ct. at 778–79, 3 L.Ed.2d at 782. If this rule applies in a particular case, the particular state law must be "so structured and administered that, in virtually all instances, it is safe to presume that judicial supervision will not disserve the interests promoted by the federal labor statutes." *Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America v. Lockridge*, 403 U.S. 274, 297–98, 91 S.Ct. 1909, 1923–24, 29

L.Ed.2d 473, 489, *reh'g denied*, 404 U.S. 874, 92 S.Ct. 24, 30 L.Ed.2d 120 (1971).[6]

In the end, the interests of the state in regulating the alleged conduct must be "balanced against both the interference with the Board's ability to adjudicate controversies committed to it by the Act, ... and the risk that the state will sanction conduct that the Act protects." *Belknap, Inc. v. Hale*, —— U.S. ——, 103 S.Ct. 3172 at 3177, 77 L.Ed.2d 798 (1983); see *Garmon*, 359 U.S. at 247, 79 S.Ct. at 780, 3 L.Ed.2d at 784.

Another branch of the pre-emption doctrine has arisen under *Machinists v. Wisconsin Employment Relations Commission*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). This doctrine "proscribes state regulation and state-law causes of action concerning conduct that Congress intended to be unregulated, ... conduct that was to remain a part of the self-help remedies left to the combatants in labor disputes...." *Belknap, supra*, 103 S.Ct. at 3177. This analysis is not relevant here because the Unions' conduct, if true as alleged, is in no sense an economic weapon Congress intended to leave unregulated. See *Teamsters Union v. Morton*, 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964); see also *Allen-Bradley Local 1111 v. Wisconsin Employment Relations Board*, 315 U.S. 740, 750, 62 S.Ct. 820, 826, 86 L.Ed. 1154, 1165 (1942); *Youngdahl v. Rainfair, Inc.*, 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957).

These principles and the decided cases lead to the ineluctable conclusion that plaintiff's state causes of action are not pre-empted. In *Linn v. United Plant Guard Workers*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), the United States Supreme Court held that state regulation of defamatory statements made with actual

---

**6.** As stated by Justice Powell, "Except where Congress has specifically provided otherwise, the States generally should remain free to enforce, for example, their law of torts or of contracts, and other laws reflecting neutral public policy." *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 156, 96 S.Ct. 2548, 2560, 49 L.Ed.2d 396, 412–13 (1976) (Powell, J., concurring).

malice only peripherally concerned the Labor Management Relations Act, and that there was an overriding state interest in protecting its citizens from such statements. *Id.* at 61, 86 S.Ct. at 662, 15 L.Ed.2d at 582. And in *Farmer v. United Brotherhood of Carpenters and Joiners,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), the Court held that state causes of action for intentional infliction of emotional distress were not pre-empted by the federal acts. *Id.* at 302, 97 S.Ct. at 1064, 51 L.Ed.2d at 351. In *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), the Court held that "a state trespass action was permissible and not preempted, since the action concerned only the location of the picketing while the arguable unfair labor practice would focus on the object of the picketing." *Belknap, supra,* 103 S.Ct. at 3183. Finally, in *Belknap, Inc. v. Hale,* the Court held that an action for breach of contract and misrepresentation by employees hired to replace economic strikers and then discharged was not pre-empted. *Id.,* 103 S.Ct. at 3183–84.

It is clear in the present case that enforcement of state laws relating to concerted violent activity are of only peripheral concern to the NLRA. There is doubtless an overriding state interest in protecting its citizens from such actions. *Garmon,* 359 U.S. at 243–44, 79 S.Ct. at 778–779, 3 L.Ed.2d at 782. And, the state law does no disservice to federal labor policy. *Lockridge,* 403 U.S. at 297–98, 91 S.Ct. at 1923–24, 29 L.Ed.2d at 489. The critical inquiry, then, since the activity complained of is arguably prohibited by the NLRA, "and hence within the exclusive jurisdiction of the NLRB, is whether the controversy presented to the state court is identical with that presented to the Board." *Belknap,* 103 S.Ct. at 3183. It is evident in this case that the inquiries are different. The Court would be concerned with whether the conduct violated state tort law. The Board would be concerned only with whether the activity was coercive or threatening under 29 U.S.C. § 158.

Thus, the Court is of the opinion that this action is not pre-empted by the NLRA. The fact that the defendants' alleged actions might also come within RICO is of no consequence. Contrary to defendants' arguments, RICO is not part of the national labor policy. RICO is concerned only with preventing practitioners of organized crime from keeping their ill-gotten gains. See Congressional Statement of Findings and Purpose, § 1, Pub.L. 91–452.[7] If this were not enough, Congress expressly negated any pre-emptive notions in § 904(b) of Public Law 91–452: [8]

> Nothing in this title shall supersede any provision of Federal, State, or other law imposing criminal penalties or affording civil remedies in addition to those provided for in this title.[9]

It is clear then that Congress intended RICO have no pre-emptive effect. To combine RICO with the NLRA to find pre-emption would be pure sophistry and a gross intrusion upon the provinces of Congress and the States. This the Court will not do.

The plaintiff's motion to remand will be granted.

---

7.  Reproduced as a Note following 18 U.S.C. § 1961 in the United States Code Annotated (West 1983).

8.  Pub.L. 91–452 is commonly known as the Organized Crime Control Act of 1970.

9.  *See Note following* 18 U.S.C.A. § 1961.