Pat R. RILEY, Plaintiff,

v.

TOKOLA OFFSHORE, INC., etc., Defendant.

TOKOLA OFFSHORE, INC., etc. Cross Complainant,

v.

BROWN & ROOT CONSTRUCTORS, INC., etc., Cross Defendant.

TOKOLA OFFSHORE, INC., Third Party Plaintiff,

v.

PILE DRIVERS, BRIDGE, WHARF, AND DOCK CARPENTERS LOCAL NO. 2375, etc., Third Party Defendant.

No. CV 84–7887.

United States District Court, C.D. California.

Nov. 1, 1985.

---

Drivers, Bridge, Wharf, and Dock Carpenters Local No. 2375 ("Local 2375")'s motion for summary judgment. Having considered all of the parties' arguments and submissions, the court hereby GRANTS defendants' motion, for the reasons given below.

## I. OVERVIEW

Pat Riley, a member of the Pile Drivers, etc. Local Union No. 2375 ("Local 2375"), and of the United Brotherhood of Carpenters V ("UBC") worked for Tokola Offshore, Inc. in the construction of an offshore oil rig. Riley had a heart attack, allegedly because he was pressed to work too strenuously on his job. Riley filed a traditional seaman's action, seeking damages under the Jones Act. Tokola filed a third-party complaint against both Local 2375 and UBC, demanding indemnification, contribution, and declaratory relief.

In February and March 1985, UBC and Local 2375 filed dual motions to dismiss Tokola's third-party complaint. Both motions claimed that Tokola had failed to state a claim upon which relief could be granted and, further, that the National Labor Relations Act and federal labor policy preempted Tokola's action.

On April 17, 1985, this Court denied the unions' dual motions to dismiss Tokola's third-party claims. The Court found, upon a review of the pleadings, that the third-party action was not preempted by the National Labor Relations Act (29 U.S.C. 157, 158) ("NLRA"). Preemption by the Labor Management Relations Act (29 U.S.C. 185(a)) ("LMRA"), however, was neither briefed nor argued by the parties in that motion.

Following the Court's order, UBC and Local 2375 appeared in the action and filed answers to Tokola's third-party complaint. In June 1985 Local 2375 again moved for dismissal in a motion for summary judgment, asserting that the United States Supreme Court decision in *Allis-Chalmers Corpe. v. Lueck,* —— U.S. ——, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) ("*Allis-Chal-*

Kaplan, Zorigian & Kaplan, Victor E. Kaplan, Wilmington, Cal., for plaintiff.

McCutchen, Black, Verleger & Shea, Robert E. Coppola, William P. Barry, Nestor Barrero, Los Angeles, Cal., for defendant Tokola Offshore.

DeCarlo and Connor, Los Angeles, Cal., for third party defendant Pile Drivers, Bridge, Wharf and Dock Carpenters, Local Union No. 2375.

Reich, Adell & Crost, Glenn Rothner, John Rubin, Los Angeles, Cal., for third party defendant United Broth. of Carpenters and Joiners of America.

Wise, Wiezorek, Timmons & Wise, Duane H. Timmons, John H. Shean, Los Angeles, Cal., for cross defendant and cross claimant Ugland Overseas Services.

## MEMORANDUM OF DECISION AND ORDER

KELLEHER, Senior District Judge.

The court has before it third party defendant United Brotherhood of Carpenters ("UBC") and third party defendant Pile

mers") was dispositive. *Allis-Chalmers* was decided April 16, 1985, two weeks after this court had heard Local 2375 and UBC's earlier dual motion for dismissal. Tokola opposed Local 2375's later motion, arguing that a number of material issues of fact existed none of which were susceptible to summary adjudication, and further, that its theory of liability against Local 2375 was outside the scope of *Allis-Chalmers*. On June 3, 1985, this Court denied Local 2375's motion.

In its opposition to the present motion, Tokola understandably emphasize the two prior rulings in its favor. *See* Tokola's present Opposition at 4–5. "Now, UBC and Local 2375 are again before this Court on their joint motion seeking summary judgment on the basis of the same discredited theories that have been rejected in their prior motions."

## II. SUMMARY OF CONCLUSIONS

### A. Tort

Tokola, in its Opposition, concentrates on the factual dissimilarities between *Allis-Chalmers* and this case. Yet the law of federal pre-emption under LMRA 301, as stated in *Allis-Chalmers* directly governs this case.

Under *Allis-Chalmers*, the key determinant is whether Local 2375 and UBC ("the unions") owed an *independent* duty—that is, a duty *not* "rooted" in a collective bargaining agreement ("CBA")—to Tokola. Tokola's present Opposition, when considered in conjunction with all evidence adduced thus far, when granted the benefit of every ambiguity, and even when combined with all favorable assertions from Tokola's two previous Oppositions, fails to articulate an independent tort claim.

Therefore, the purported fact issue, "was Local 2375's conduct reasonable?" is actually immaterial. Assuming *arguendo* that the unions had referred medically unfit workers to work for Tokola, this court would still have no grounds on which to rule that the unions had thereby breached any independent, pre-existing tort duty.

Since no authority has been cited establishing the existence of an independent legal duty to refer healthy workers, Tokola's claims against the unions are grounded primarily in contract.

### B. Contract

Tokola's contract claim seems to also be pre-empted. The alleged promises Tokola is suing on (which the unions deny making) took the form of oral assurances that all referred workers would be medically fit. Yet, the precise point of how, when, and by whom hiring-hall workers were to be medically pre-screened was thrashed out in the contractual negotiations leading up to the collective bargaining agreement ("CBA"). This fact, the vigorous collective bargaining over the "medical issue," is not disputed.

Tokola now alleges the existence of an oral contract, by which the unions gave back a concession they had won from Tokola. After having, by all accounts, resolutely insisted on having *no* medical pre-screening, the unions suddenly, according to Tokola, orally undertook to vouch for the physical capability of every worker who passed through the hiring hall. The plausibility of this scenario does not concern this Court. Under *Allis-Chalmers*, the Court is simply pre-empted from enforcing a contract which modifies, or is dependent on interpretation of, the CBA.

## III. ANALYSIS

### A. PREEMPTION

#### Generally

In *Allis-Chalmers* the Supreme Court restated and updated the preemptive effect of LMRA 301.

If the policies that animate 301 are to be given their proper range, however, the pre-emptive effect of 301 must extend beyond suits alleging contract violations. These policies require that *"the relationship created by [a collective bargaining] agreement"* be defined by application of "an evolving federal common law grounded in national labor policy." The interests in interpretive uniformity and predictability that require

that labor-contract disputes be resolved by reference to federal law also require that the meaning given to a contract phrase or term also be subject to uniform federal interpretation. Thus questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by re-labeling their contract claims as claims for tortious breach of contract. 105 S.Ct. at 1911.

In this case the parties' expectations in arriving at a CBA may not and need not have taken account of developments in state tort law governing "negligent referral." Under *Allis v. Chalmers* they are all shielded from such contingencies.

*Tokola's Contract Claim*

Taking as true Tokola's allegations of oral contract, the company has shown that it successfully executed the following strategy:

1. In negotiations leading up to the CBA Tokola encountered stiff union resistance on the "medical issue," that is, union resistance to Tokola's initial insistance on medical pre-screening.

2. The unions' negotiator asked the company the "not to push the medical issue, to let it lie the way it was and not ruffle anyone's feathers." (Declaration of W.P. Barry, exh. B at 00041/20–22.) Tokola then completely abandoned its demand for medical pre-screening, and signed a CBA containing no such provision.

3. At a pre-job conference, held *pursuant to* the final and then-operative CBA, Tokola effectively reopened the issue and, before it allowed the job—which was *covered* by the CBA—to proceed, Tokola extracted the oral

warranty-of-medical-capability on which it now is suing.

Leaving aside the plausibility of such a sequence occuring [the union denies making any such oral commitment], the substance of the alleged oral contract addresses a point already covered by the CBA. Therefore, Local 2375 argues, the alleged oral contract should be considered a "modification" of the CBA. If so, Tokola's contract claim is pre-empted. Tokola does not challenge this legal consequence, but instead disputes the unions' characterization of the contract as a "modification" of the CBA.

Whether the oral contract is "independent" or a "modification" depends on a comparison of its terms with those of the CBA. The CBA contains no medical screening provisions. However all parties agree the point was bargained over. If the unions had acceded to Tokola's medical screening bargaining demands, then the CBA *would have* contained the resulting provisions. Had those provisions later been orally cancelled, that would indisputably constitute a modification. The actual case merely presents the inverse situation. The absence of medical fitness warranties or screening provisions in the CBA represents a negotiated outcome.

Seen in this light, the alleged oral contract *is*, for all meaningful purposes, a modification of the CBA. Even if not labelled a "modification," it is *substantially dependent* on interpretation of the CBA. Therefore, Tokola's state-law contract count is pre-empted.

*Tokola's Tort Claim*

The specific holding of *Allis-Chalmers* reads as follows. "We do hold that when resolution of a state law claim is *substantially dependent* upon analysis of the terms of an agreement made between the parties in a labor contract, that claim *must* either be treated as a 301 claim or dismissed as pre-empted by federal labor-contract law." 105 S.Ct. at 1916 (emphasis added, citations omitted). Here, the only source of the unions' duties to screen work-

ers referred through the hiring hall lies in the parties' contractual relationship, which is, of course tied to the CBA.

The unions have argued from the outset that the tort of "negligent referral" is substantially, if not entirely, derived from the parties contractual relationship. Tokola rests on its earlier argument that the unions incurred a "self-imposed" duty to screen workers. *See* Opposition at 24 (referring to prior arguments wherein Tokola insists that the unions' contractual "undertaking" creates a tort duty.) This is just artful pleading. Tort duties must emanate from the state.

*The "substantial State interest" exception to preemption*

Alternatively, Tokola quotes *Farmer v. United Brotherhood of Carpenters and Joiners*, 430 U.S. 290, 97 S.Ct. 9056, 51 L.Ed.2d 338 (1977), for the proposition that the pre-emption "doctrine is to be avoided where the State has a *substantial interest* in regulation of the conduct at issue." (emphasis added). The most telling proof that the state of California has no substantial interest in claimed tort of "negligent referral" is the fact the parties could have waived any purported duty. They, in effect, agreed to just that in the CBA.

In *Allis-Chalmers* the Court attached significance to this waivability of a tort duty. "State-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements." 105 S.Ct. at 1912. In the case before it, the Court determined that under Wisconsin law the parties "are free to bargain about" the assertedly tortious conduct. "That being so, this tort claim is firmly rooted in the expectations of the parties that must be evaluated by federal contract law." *Id.*

In the cases cited by Tokola, holding that certain state claims are excepted from the pre-emption doctrine (Opposition at 23–24), none of the duties at issue (intentional infliction of emotional distress, wrongful termination, malpractice) were waivable.

*Tokola's failure to allege cognizable damages*

This decision is based solely on grounds of preemption. Still, it is worth noting that, as the pleadings stand, Tokola has apparently failed to allege grounds on which any of its potential damages may be traced to defendants' negligence. The reasoning which leads to this conclusion is straightforward:

1. Riley is suing Tokola for negligently overworking him. Tokola, in suing the unions for indemnification, seeks to recover that portion of any damages awarded to Riley which will be attributable to their (the unions') negligent referral.

2. Any judgment awarded to Riley against Tokola will be for injuries caused by Tokola's behavior; injuries caused by Riley's own unfitness would not appear to be compensable. Even a judgment for less than 100% of Riley's injuries (based on comparative fault) would be wholly traceable to Tokola's negligence. This is because such judgment would be discounted so as to omit compensation for injuries traceable to Riley's own medical unfitness.

3. The unions are not accountable for Tokola's negligent overworking of any employee.

4. Thus, Tokola's action over for indemnity is based on an anticipated judgment for Riley which would, if rendered, be based solely on injuries caused by Tokola (in overworking Riley) not by the unions (in failing to screen for medical unfitness.)

However, since Tokola's state law claims are preempted, it is not necessary to reach this issue.

## IV. CONCLUSION

Resolution of this action will be substantially dependent on the terms, scope, performance, and/or modification of a collective bargaining agreement. Hence, under

LMRA 301, federal common law pre-empts state law unless an exception applies.

The state of California does not have such a substantial interest in regulation of the conduct at issue as to support an exception to the pre-emption doctrine.

Therefore it is ordered that the motion for summary judgment is granted.