STOVE, FURNACE AND ALLIED AP-
PLIANCE WORKERS' INTERNA-
TIONAL UNION, LOCAL 185, AFL–
CIO, Plaintiff,

v.

**WEYERHAEUSER PAPER
COMPANY, Defendant.**

No. 86–3598.

United States District Court,
S.D. Illinois.

Nov. 10, 1986.

Robert C. Nelson, Belleville, Ill., for plaintiff.

James C. Cook, Walker & Williams, Belleville, Ill., for defendant.

**MEMORANDUM AND ORDER**

STIEHL, District Judge:

Plaintiff, Stove, Furnace and Allied Appliance Workers' International Union, Local 185, AFL–CIO (Union), filed a Petition for a Temporary Restraining Order and Injunctive Relief in state court to adjoin and restrain defendant, Weyerhaeuser Paper Company (Weyerhaeuser), from implementing its alcohol and drug testing plan at its Belleville, Illinois plant until a pending arbitration proceeding had been completed. After a TRO was issued by state court, the matter was removed to this Court by Weyerhaeuser under 28 U.S.C. secs. 1331 and 1441.

This Court heard arguments on Weyerhaeuser's Motion to Vacate the TRO issued by the state court, and to dismiss plaintiff

Union's complaint. These motions were denied, and this Court issued its TRO on October 24, 1986, and extended it on November 3, 1986. In the meantime, on October 28, 1986, an evidentiary hearing was held on the merits of Union's application for a preliminary injunction.

Union contends that adoption by Weyerhaeuser of the alcohol and drug awareness program is a violation of the parties collective bargaining agreement, and that its members will be irreparably harmed if this Court does not issue its preliminary injunction enjoining and restraining Weyerhaeuser from implementing its alcohol and drug awareness policy pending final arbitration. Union concedes that it has an adequate remedy through arbitration if one of its members is suspended or fired, but contends that the testing required by the policy under certain circumstances would constitute an "invasion of privacy," and could result in a "black mark" on the personnel records of its members, and that for these harms there is no adequate remedy.

### FINDINGS OF FACT

Union is a voluntary unincorporated association recognized by the National Labor Relations Board as the exclusive bargaining representative of certain hourly employees at Weyerhaeuser's Belleville, Illinois Shipping Container Plant. Weyerhaeuser is a corporation having its principal place of business at Tacoma, Washington. Union and Weyerhaeuser entered into a collective bargaining agreement dated June 20, 1986 for the employment of Union's members at Weyerhaeuser's Belleville plant.

Weyerhaeuser is an employer engaged in commerce, and the Union represents employees engaged in commerce, all within the meaning of the National Labor Relations Act, 29 U.S.C. secs. 152(2), (3), (6) and (7).

The parties collective bargaining agreement of June 20, 1986, contains a provision for the resolution of grievances consisting of three in-plant steps, and culminating in binding arbitration as a fourth and final step.

In January, 1986, Weyerhaeuser advised Union that it intended to formulate and adopt an "alcohol and drug awareness program," and that on a number of occasions over the ensuing eight months invited Union to designate two of its members to serve on the committee formulating the plan. This committee was composed of five management representatives, two hourly employees who were members of the Union, but had not been selected by Union, and was planned to include also the two Union designees. Union wholly refused to participate.

Union and Weyerhaeuser engaged in collective bargaining during the months of May and June, 1986, culminating in the agreement of June 20, 1986. Neither side at any time during this process brought up the question of the alcohol and drug awareness policy or program, although both sides were obviously aware that it was an on-going plan of Weyerhaeuser.

Weyerhaeuser presented its draft alcohol and drug testing awareness program to Union on August 29, 1986, and again asked Union to participate with representation on the committee, and to review the draft, and make any suggestions it might have for changes. By letter dated September 5, Union formally declined to participate.

On September 30th, Weyerhaeuser presented to Union its final written draft of the policy with a proposed implementation date of November 1st. Union then filed its initial grievance under the collective bargaining agreement on October 2, and Union filed an unfair labor practice charge with the National Labor Relations Board on October 10, 1986. Weyerhaeuser advanced its implementation date to October 15th, and on that date Union obtained its TRO in state court.

Shop rules presently in effect at Weyerhaeuser's Belleville plant permit discipline of employees, including discharge, for impairment by use of alcohol and drugs.

## CONCLUSIONS OF LAW

■ Jurisdiction for this matter is based in the Labor-Management Relations Act, 29 U.S.C. sec. 185. This Court's jurisdiction is not pre-empted by the plaintiff's filing of an unfair labor charge with the National Labor Relations Board. Despite citing *International Longshoremen's Ass'n v. Davis*, —— U.S. ——, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986) and other cases, Weyerhaeuser's argument of pre-emption fails. In *Farmer v. United Brotherhood of Carpenters & Joiners of America, Local 25*, 430 U.S. 290, 302, 97 S.Ct. 1056, 1064, 51 L.Ed.2d 338 (1977), the Court ruled that if there is little risk of interference with a federal administrative scheme, then the pre-emption doctrine will not be applied. This Court finds that Union's request for injunctive relief until the arbitrator issues a ruling makes any potential action by this Court unlikely to interfere with the NLRB's role in this dispute.

■ Secondly, the Court rules that the Norris-LaGuardia Act, 29 U.S.C. sec. 101–115, does not prohibit the issuing of an injunction in this type of labor dispute. Section two of the act states its public policy, and it is clear that the legislation is meant to prohibit federal court injunctions against peaceful organization and association that is tied to the collective bargaining process. 29 U.S.C. sec. 102. This type of request by Union does not fall within the public policy enumerated in Norris-LaGuardia. *See Drywall Tapers v. Operative Plasterers'*, 537 F.2d 669 (2d Cir.1976). Despite the narrowing of *Boys Markets Inc. v. Retail Clerks Union Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) by *Buffalo Forge Co. v. United Steelworkers of America*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), a hearing on a motion to enjoin pending arbitration is not prohibited by Norris-LaGuardia. The concern in *Buffalo Forge* was with making federal courts participants in the merits of arbitrable matters. 428 U.S. at ·411, 96 S.Ct. at 3149. Consistent with the conclusion in *Boys Markets*, this Court is now asked to issue an injunction pending arbitration. The Court's action will not interfere with the arbitrator's role.

The key case in this circuit on the standard for preliminary injunctions is *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380 (7th Cir.1984). While there are more recent cases, i.e. *American Hospital Supply v. Hospital Products Ltd.*, 780 F.2d 589 (7th Cir.1986) and *Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429 (7th Cir.1986), *Roland Machinery* acts as the foundation upon which these cases build their decisions. This Court, too, shall use such groundwork.

Essential to Union's request for injunctive relief is a showing that it has no adequate remedy at law, and that it will suffer irreparable harm if the preliminary injunction is not ordered. Only if Union has shown it will suffer harm that cannot be rectified by an arbitrator's decision will a preliminary injunction be proper.

■ Through the testimony of its two witnesses, Union attempted to show that the testing proposed by Weyerhaeuser would cause an invasion of privacy and a "black mark" on both its members' work records and reputations. Union asserted that such an invasion and the recording of said tests would be injuries that neither the arbitrator nor a court of law could redress. The Court agrees that both the privacy and the "black mark" arguments are potential injuries that cannot be redressed by a court at law or an arbitrator.

In considering this motion, the Court must also determine if any irreparable harm will come to Weyerhaeuser if the injunction is granted. This Court finds that Weyerhaeuser has not shown any irreparable harm should its drug testing plan be delayed pending arbitration. Weyerhaeuser can continue to use its present shop rules to enforce safety in the work place pending arbitration.

Union must also show some likelihood of success on the merits of its claim. The standard for such a showing is low, however. It is enough that Union's chances are better than negligible. *Roland* at 387,

*citing Omega Satellite Products Co. v. City of Indianapolis,* 694 F.2d 119, 123 (7th Cir.1982). It is apparent from the testimony given and briefs filed that Union's chances before the arbitrator are better than negligible. The nature of the rule to be implemented and the proximity to the signing of a new collective bargaining agreement convinces this Court that Union has shown some likelihood of success on the merits of this dispute.

It should be noted that the low threshold required of the Union in the Seventh Circuit explains why the Supreme Court's concern in *Buffalo Forge Co.,* does not apply to this case. Simply put, the 'negligible' standard required of the movants in requesting an injunction prevents this Court from interfering with the parties' contractual agreement to have such disputes resolved by extra-judicial means. Because the Court is not required to rule specifically on the merits of this dispute, *Buffalo Forge's* concern that the arbitrator's function would be usurped is not at issue in this case.

The Court finds the balance of hardships weigh on the side of Union. Union has shown its members may suffer irreparable harm if the company's drug screening program is implemented prior to arbitration, while Weyerhaeuser has shown no irreparable harm to it should the testing be delayed pending arbitration.

There has been no showing of any consequences to anyone beyond the immediate parties, and, therefore, public policy will not be examined by this Court. *Roland* at 388.

The Court expresses no opinion on whether the proposed alcohol and drug testing program violates the parties collective bargaining agreement, as Union contends, or comes within the perview of management's right to direct the work force as recognized in the collective bargaining agreement, as Weyerhaeuser contends. These are the issues that will be before the arbitrator.

The Weyerhaeuser Paper Company is therefore, preliminarily ENJOINED and RESTRAINED from implementing its alcohol and drug testing program on those of its employees who are members of Stove, Furnace and Allied Appliance Workers' International Union, Local 185, AFL–CIO until the arbitration arising out of the grievance filed by Union on about October 2, 1986 is completed.

This preliminary injunction is expressly conditioned upon the posting by Union of a bond in the amount of $5,000 with the Clerk of the Court.

IT IS SO ORDERED