A & D SUPERMARKETS, INC., # 2, et al., Plaintiffs,

v.

UNITED FOOD AND COMMERCIAL WORKERS, LOCAL UNION 880, et al., Defendants.

No. C88–3551.

United States District Court, N.D. Ohio, E.D.

Dec. 22, 1989.

G. Roger King, Jones, Day, Reevis & Pogue, Columbus, Ohio, for plaintiffs.

Melvin S. Schwarzwald, Todd C. Park, Schwarzwald, Robiner, Rock & Levin, Cleveland, Ohio, William B. Gore, Laybourne, Smith, Gore & Goldsmith, Akron, Ohio, Anthony P. Sgambati, III, Green, Haines, Sgambati, Youngstown, Ohio, for defendants.

## MEMORANDUM OF OPINION

BATCHELDER, District Judge.

This matter is before the Court on the motion of the defendants to dismiss the complaint and/or to join parties. Based on this motion, the parties' briefs and the complaint, the Court finds that the federal antitrust claims are not covered by the statutory or nonstatutory labor exemptions to the federal antitrust laws; that the state antitrust claims are preempted by federal law; that the plaintiffs' claims against the individual defendants are insufficient as a matter of law; and that the co-conspirator unionized supermarkets are not persons required to be joined by Fed.R.Civ.P. 19.

### I.

The plaintiffs, independent non-union retail grocery stores located in the Youngstown, Warren, Massillon, Akron and Canton areas, have brought this action seeking declaratory and injunctive relief and treble damages against the defendants, United Food and Commercial Workers Union ("UFCW"), Local Union No. 880 ("Local 880") and its officers, based on allegations that the defendants have violated various provisions of the Sherman Act, 15 U.S.C. § 1, et seq., (Counts I–VI) by conspiring with unionized supermarkets to eliminate the plaintiffs as competitors by picketing them pursuant to a wage stabilization clause contained in collective bargaining agreements between the defendants and the co-conspirator union supermarkets, which permits the co-conspirator union supermarkets to reduce the union employee's wages to the level of the plaintiffs' non-unionized stores unless the union is picketing the plaintiffs' stores. *See* complaint ¶'s 1, 13–19, 29. The Wage Stabilization Clause (provided in its entirety by defendants in their motion to dismiss) states:

Section 1(a). Effective March 1, 1988, the Employer shall have the right to reduce the economic terms and conditions of this Agreement in any store that is in a geographic marketing area that is directly competitive with any supermarket that has rates of pay or other economic terms and conditions below the standards of this Agreement.

Section 1(b). Such reductions shall be no greater than the extent that the store in question is below the standards of this Agreement and shall not occur until sixty (60) days after the Employer has given the Union and Federal Mediation and Conciliation Service notice of the dispute. The Union and the Employer shall enter into negotiations during the sixty (60) days period following the giving of such notice.

Section 1(c). No notice shall be given under (b) above until an Employer has submitted a request to the Akron–Canton Food Industry Committee and such request has been approved or modified in whole or in part, in writing, by the Akron–Canton Food Industry Committee Food with a copy to the Union. The approval must contain the following information:

1. The identity of the competition providing less than the economic terms and conditions of this Agreement;

2. The stores of the Employer that are in the directly competitive geographic marketing area with the competition providing less than the economic terms and conditions of this Agreement; and

3. The proposed reductions in wages or other economic terms and conditions.

Section 2. The Employer shall not exercise the rights granted in Section 1(a) above when the Union is engaged in picketing the consumer entrance or entrances of the store or stores described in Section 1(a) above during business hours on a regular and daily basis, nor when the Union is prevented from taking such action either by law or by the United Food and Commercial Workers International Union, AFL–CIO–CLC.

Section 3. In the event that the Akron–Canton Food Industry Committee implements any proposed modifications in the affected stores pursuant to the terms of this Article in the absence of an agreement with the Union to do so, the Union shall have the right to strike the stores in which the modifications have been implemented and such strike shall not be a violation of Article XVII, Section 1, provided that the strike is limited to the issues of the implemented modifications.

Section 4. The provisions of this Article shall not apply to independent owner-operators of small supermarkets with two (2) stores or less (not including owners who are part of larger cooperative groups), to stores which have collective bargaining agreements with the Union which were signed before November 29, 1987, until those agreements expire, nor to any agreement which is the product of a proceeding in Federal Bankruptcy Court.

*See* motion to dismiss, at pages 5–6.

The plaintiffs have also asserted claims under the Ohio Monopolies Statute, O.R.C. § 1331.01 et seq. (Counts VII–X) and for tortious interference with business relations.

The defendants have filed a motion to dismiss the complaint and/or to join parties on the grounds that the federal antitrust claims are covered by the statutory and nonstatutory labor exemption; that the state antitrust claims are preempted; that the individual union defendants must be dismissed because the complaint does not allege that they engaged in inherently wrongful conduct; and that the co-conspir-

ator union supermarkets must be joined as parties.

## II.

The Court, in reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), may dismiss the complaint only if the plaintiffs can prove no set of facts in support of their complaint which would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## III.

### *Labor Exemptions to the Federal Antitrust Laws*

#### A. Statutory Exemption

■ In *United States v. Hutcheson,* 312 U.S. 219, 231, 61 S.Ct. 463, 465, 85 L.Ed. 788 (1941), the Carpenters' and the Machinists' union were involved in a jurisdictional dispute regarding the erection and dismantling of machinery for the construction of a new building for Anheuser–Busch, Inc. Anheuser–Busch gave the disputed jobs to the Machinists, and the Carpenters struck and picketed Anheuser–Busch and their tenant and asked union members and friends to boycott Anheuser–Busch beer. The Supreme Court stated that "whether trade union conduct constitutes a violation of the Sherman Law is to be determined only by reading the Sherman Law and § 20 of the Clayton Act and the Norris–LaGuardia Act as a harmonizing text of outlawry of labor conduct." *Id.* at 219, 61 S.Ct. at 463. The Court set out the classic formulation for application of the statutory exemption:

So long as a union acts in its self-interest and does not combine with non-labor groups, the licit and the illicit under § 20 are not to be distinguished by any judgment regarding the wisdom or unwisdom, the rightness or wrongness, the selfishness or unselfishness of the end of which the particular union activities are the means.

*Id.* at 232, 61 S.Ct. at 466.

The Supreme Court determined that the statutory exemption applied in that case and the defendants could not be indicted

because § 20 of the Clayton Act did not differentiate between union conduct directed against an employer due to a controversy arising in their employer/employee relationship and conduct similarly directed against the employer due to an "internicine struggle between two unions seeking the favor of the same employer." *Id.*

In this case, the defendants maintain that the Wage Stabilization Clause by its own terms does not apply unless the plaintiff stores are paying lower wages and benefits than are the defendants, and that according to the plaintiffs' own allegations, in many instances the plaintiffs are paying the same or higher wages. Under these conditions the defendants contend that the Wage Stabilization clause does not apply to their picketing activities, that this picketing is thus not conducted in combination with a non-union group, and that consequently the picketing is protected by the statutory exemption. *See* motion to dismiss at pages 14–16. The defendants further argue that the plaintiffs have failed to allege that the procedures to implement the clause contained therein have been followed. *See* motion at pages 4–8.

The plaintiffs in opposition contend that they have adequately alleged that the picketing was conducted pursuant to the Clause, that the defendants' mere assertion that equal or higher wages and benefits are paid by some plaintiffs does not constitute evidence that the picketing was not pursuant to the Clause, and, in fact, the defendants' picketing those plaintiffs merely indicates that defendants have failed to do their homework on the question of wages, and that the question of whether the picketing was conducted pursuant to the Clause presents a jury issue. *See* opposition at pages 8–9.

The Court finds that the plaintiffs have adequately alleged a conspiracy existing between the defendant union and a non-labor group, the co-conspirator union supermarkets, such that the statutory exemption, applicable only to labor entities acting alone or in combination with other labor entities, does not apply. *See* complaint, ¶'s 29–33, 40–41, 58–60, 67–69. The plaintiffs correctly point out that the complaint, whose allegations must be accepted as true for purposes of a motion to dismiss, alleges that the picketing is conducted pursuant to the Clause, and that the factual issue is a jury question. Whether or not the procedures in the Clause have been properly followed is not dispositive because the picketing may well have been the result of the Clause, as the plaintiffs allege, regardless of whether its explicit procedures were followed.

The Court recognizes that other courts have held that where plaintiffs base their claim of conspiracy solely upon the existence of a collective bargaining agreement concerning subjects of mandatory bargaining, those allegations alone will not suffice to deny the union the benefit of the statutory exemption, *see, e.g., Mid–America Reg. Bar. v. Will Cty. Carpenters,* 675 F.2d 881, 884–90 (7th Cir.1982), but believes that the better reasoned approach is that collective bargaining agreements should be analyzed under the standards set forth in *UMW v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). That standard was concisely set out in *Mid–America:*[1]

> Under *Pennington* the plaintiff must allege five elements: 1) that the union must have agreed to impose upon other employers terms agreed to by it and a "non-labor" entity; 2) that the union activity must not be unilateral; 3) that the union activity must be at the behest of or 4) in combination with, a non-labor entity which occupies such a position in the competitive structure that it would directly benefit from the restraint; and 5) that the union and non-labor groups share an anti-competitive concerted purpose.

*Mid–America,* 675 F.2d at 888–889.

This Court finds that the plaintiffs have sufficiently alleged each of these elements to withstand defendants' motion to dismiss

---

1. The *Mid–America* court, however, also utilized the *Pennington* analysis to find that the plaintiffs there had failed to allege facts which would remove the union agreement from the statutory exemption.

on the grounds of the statutory labor exemption to the federal antitrust laws.

### B. Non–Statutory Exemption

■ A much more difficult question is presented by the defendants' motion to dismiss on the grounds that the non-statutory exemption specifically recognized in *Connell Constr. Co., Inc. v. Plumbers and Steamfitters Local Union No. 100*, 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975), applies to this case.

In *Connell*, the building trades union supported its efforts to organize the mechanical subcontractors by picketing certain general contractors, including plaintiff Connell, to compel them to agree to sublet contracts only to firms party to the multi-employer collective bargaining agreement. The union disclaimed any interest in representing the general contractor's employees. When Connell refused, the union picketed it. The Supreme Court held that the non-statutory exemption did not shield the union from anti-trust liability because the union imposed direct restraints on the business markets, since the agreements with Connell and the other general contractors indiscriminately excluded nonunion subcontractors from a portion of the market even if their competitive advantages were not derived from substandard wages and working conditions, but rather from more efficient operating methods. Additionally, the collective bargaining agreement between the union and the subcontractors contained a "most favored nation" clause which sheltered the subcontractors from outside competition in that portion of the market covered by the agreements between the general contractors and the union. The Supreme Court held that this also directly restrained the business market.

*Connell* set out the parameters of the non-statutory exemption:

> The nonstatutory exemption has its source in the strong labor policy favoring the association of employees to eliminate competition over wages and working conditions. Union success in organizing workers and standardizing wages ultimately will affect price competition among employers, but the goals of feder-

al labor law never could be achieved if this effect on business competition were held a violation of the antitrust laws. The Court therefore has acknowledged that labor policy requires tolerance for the lessening of business competition based on differences in wages and working conditions. Labor policy clearly does not require, however, that a union have freedom to impose direct restraints on competition among those who employ its members. Thus, while the statutory exemption allows unions to accomplish some restraints by acting unilaterally, the nonstatutory exemption offers no similar protection when a union and a nonlabor party agree to restrain competition in a business market. [citations omitted]

*Id.* at 622, 95 S.Ct. at 1835.

*Connell* makes it clear that the court must determine whether the alleged restraint affects primarily the labor market, in which case the effects on the product market are merely the natural consequence of the legitimate labor market restraints permitted in order to promote the national policy of elimination of competition based on wages, or affects primarily the product market, in which case no labor policy is served and the restraint violates the policies of the antitrust laws. By this delicate balance, the policies of each are served.

The defendants contend that the Wage Stabilization Clause at issue is concerned with the mandatory subjects of bargaining of economic terms and conditions, *see* motion at pages 19–20, and thus any adverse effects the plaintiffs allegedly have experienced are the natural consequences of the defendant union's elimination of competition based on wages and other working conditions. *See id.* at pages 19–22. The defendants also contend that the plaintiffs have failed to allege any significant anti-competitive effects apart from those following naturally from the elimination of competition based on wages, and other working conditions. *Id.*

The defendants analogize the Wage Stabilization Clause to the clause restricting

the operating hours of meat departments at issue in *Local Union No. 189, Amal. Meat Cut. v. Jewel Tea Company, Inc.*, 381 U.S. 676, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965). In that case, Jewel Tea Company, an employer of members of the butcher's union, signed, under duress, an agreement which restricted food store meat departments from selling fresh meat at certain hours and brought suit alleging that such restriction violated the Sherman Act. The Supreme Court noted that the case did not involve claims of a union-employer conspiracy aimed against Jewel Tea, but rather a marketing restriction obtained by the union pursuant to its own labor interest. The Supreme Court stated that the issue was whether the marketing hours restriction was so intimately related to wages that the union's successful attempt to obtain the restriction through its bona fide, armslength negotiating rule fell within the protection of the labor policy. The Court held that it did, finding that although the effect on competition was apparent and real, the union's concern was immediate and direct and outweighed the antitrust policy.

The plaintiffs, on the other hand, deny that the Wage Stabilization Clause is concerned with a mandatory subject of collective bargaining and contend that the clause falls within the parameters set out in *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). In *Pennington*, the union brought an action against the Phillips Brothers Coal Co. to recover $55,000 in royalty payments due under the National Bituminous Coal Wage Agreement. Phillips crossclaimed alleging that the union and certain large coal operators agreed to reduce the problem of overproduction by agreeing, *inter alia*, to impose agreed-upon wage scales on smaller coal companies in an effort to eliminate them from the market. The Supreme Court held that the union may conclude a wage agreement with a multi-employer unit and it may, as a matter of its own policy, but not by agreement with all or part of the employers of that unit, seek the same wages from other employers. The union may not, however, seek to impose wage rates on one employer based on its agreement with another, because it thereby surrenders its freedom of action with respect to its bargaining policy and thus runs afoul of the antitrust laws. The Supreme Court then stated "[T]his is not to say that an agreement resulting from union-employer negotiations is automatically exempt from Sherman Act scrutiny simply because the negotiations involve a compulsory subject of bargaining, regardless of the subject or the form and content of the agreement." *Id.* at 664, 85 S.Ct. at 1590. The Court also stated that in cases where the union has agreed with one set of employers to impose certain wage scales on other bargaining units, the union loses its exemption even if it seeks the same wages, etc. from the other bargaining unit. *Id.* at 666, 85 S.Ct. at 1591. *Pennington* thus makes clear that even if the Wage Stabilization Clause at issue here were found to involve matters of mandatory collective bargaining, that fact does not automatically bring it within the non-statutory exemption.

The plaintiffs further contend that the Supreme Court has recognized that a union must have the ability to respond to a bargaining situation with an employer without being strait-jacketed by prior agreements with other employers, and that the complaint alleges that the Wage Stabilization Clause does so strait-jacket the union. *See* opposition at page 12. Moreover, they contend that the Clause, like the one in *Connell*, is directed at third-parties, *i.e.*, the plaintiffs, for the purpose of driving them out of business. *Id.* at 14. Finally, the plaintiffs contend that Clause is similar to the most favored nations clause in *Connell* which was found to eliminate competition even on subjects other than wages and working conditions.

Upon review of the complaint, the Wage Stabilization Clause, the parties' briefs, and the case law, the Court finds that the plaintiffs have sufficiently alleged that the operation of the Clause does not primarily affect the labor market as did the clause in *Jewel Tea*, such that it falls within the non-statutory exemption, but more directly affects the product market such that the

Clause falls within the ambit of the *Connell* and *Pennington* cases. There is no doubt that the union defendants' picketing of the plaintiffs pursuant to the Clause would have the effect of *maintaining* the union wage rates from reduction by the *co-conspirator union employers* in instances where the plaintiffs allegedly pay lower wages, and thus is ostensibly related to wages and working conditions, as in *Jewel Tea*, but this picketing does not relate to any legitimate union interest regarding the *plaintiffs*. The complaint alleges that the union does not have any legitimate interest in organizing the plaintiffs inasmuch as the union has never demanded to be recognized by the plaintiffs' employees as their collective bargaining agent and has in fact disclaimed any interest in executing collective bargaining agreements with or in organizing the plaintiffs' employees. *See* complaint ¶ 43.

Furthermore, the complaint alleges that the union defendants' picketing also extends to some plaintiffs whose employees in fact do not receive lower wages and benefits than do union employees. This allegation undercuts defendants' assertion that Local 880 was involved in area standards picketing against the plaintiff stores. Plaintiffs maintain that picketing these plaintiffs pursuant to the Clause does not meet any legitimate goal of the union to eliminate competition based on wages and thus is subject to the analysis set forth in *Connell*.[2] Finally, the plaintiffs have pled facts from which the Court could find that even if the picketed stores were unionized by Local 880, the challenged Clause would permit the co-conspirator union employers to continue to picket them unless the wages and working conditions were the same as in the co-conspirators' stores, the type of strait-jacketing addressed in *Pennington*.

Further support for the plaintiffs' position is found in *Mackey v. National Football League*, 543 F.2d 606, 614 (8th Cir. 1976), where the Eighth Circuit held that the non-statutory exemption applies only if the restraint primarily affects only parties to a collective bargaining agreement. The instant Clause primarily affects third-parties in whom the union has no legitimate interest.

The Clause, moreover, may have a direct effect on the product market. The complaint alleges that the union's picketing has the intended effect of protecting the co-conspirator union employers' competitive positions against the plaintiffs, regardless of the source of plaintiffs' competitive advantage, by driving the plaintiffs out of the market. The Court finds that the plaintiffs have alleged facts which, if proven, may support a finding that the Clause operates as a direct restraint on the product market which is not the natural consequence of any legitimate union goal of eliminating competition based on wages.

The defendants may not rely on *Jewel Tea* because that case did not involve third-parties to the bargaining relationship and focused on the restraint the agreement had on the multi-employer bargaining unit. By contrast, *Pennington* and *Connell* dealt with the effects the challenged agreements had on third parties. It is clear that the complaint raises the issue of whether the method by which the instant defendants have chosen to protect their wages is the least restrictive as to the product market as required by *Jewel Tea*.

With respect to the defendants' argument, in their reply brief in support of their motion to dismiss, that the allegations relative to the union's picketing of the plaintiff stores must be resolved before the National Labor Relations Board, this Court notes that the Supreme Court in *Connell* held

---

**2.** The facts set forth in the complaint, if proved, would support plaintiff's claim that the clause is not related to a mandatory subject of collective bargaining activity, but is an agreement between the union and these employers to eliminate competition other than that based on wages and working conditions. In the absence of the clause, those wages and conditions may only be changed through negotiation. Thus the clause serves as an agreement whereby the employers may invite the union to picket the independent non-union competition in order to maintain for the union members that which, except for this agreement, would need no maintenance.

that "federal courts may decide labor law questions that emerge as collateral issues in suits brought under independent federal remedies, including the antitrust laws." *Connell*, 421 U.S. at 626, 95 S.Ct. at 1837. The issues raised by the plaintiffs' federal antitrust claims in this case include whether a union may enter into an agreement with a non-labor entity to drive competitors of the non-labor entity out of business by resort to methods such as picketing the competitors' stores. Even assuming that the union's long-range goal in entering into such an agreement and engaging in conduct required by the agreement is to eliminate wage-based competition, a goal which is clearly consistent with the protections afforded by federal labor policy, the question remains whether the union may be subjected to liability under the federal antitrust laws for attempting to accomplish that long-range objective by combining with a non-labor entity (here, a unionized employer) for the immediate purpose of driving competitors of the unionized employer out of business. The doctrine of primary jurisdiction of the National Labor Relations Board ("NLRB") does not prohibit this Court from addressing the merits of the federal antitrust claims in this case.

For the reasons set forth above, this Court concludes that the defendants have not demonstrated at this juncture that the statutory or nonstatutory labor antitrust exemptions apply to immunize the union from antitrust liability under the facts alleged in the complaint. The Court orders that the defendants' motion to dismiss the federal antitrust claims in the complaint is DENIED.

## IV.

### Preemption of State Law Claims

■ In Counts VII, VIII, IX, and X of their complaint, the plaintiffs allege that the conduct of the defendants constitutes horizontal group boycotting, horizontal price fixing, unreasonable restraint of trade and a conspiracy to monopolize the grocery products markets in the Youngstown, Warren, Massillon, Akron and Canton geographic areas, in violation of the Ohio Monopolies Statute, Ohio Rev.Code § 1331.01 *et seq.* Count XI of the complaint sets forth a claim for tortious interference with business relations under Ohio law. The defendants contend in their motion to dismiss that the Ohio antitrust claims are preempted by the Sherman Act, and that those claims as well as the tortious interference claim are preempted by the federal labor policy of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*

The Court finds that the Ohio antitrust claims are not preempted solely by virtue of the Sherman Act. The fact that the Ohio statute does not contain a labor antitrust exemption as does the federal law is not determinative of the preemption question, for it is possible that, in a situation in which the union ultimately was found to be entitled to immunity under the federal labor antitrust exemptions, the application of the Ohio Monopolies statute against the union would not frustrate federal policy as expressed in the labor antitrust exemptions.

The defendants further contend that the plaintiffs' antitrust and tortious interference causes of action under Ohio law are preempted by the National Labor Relations Act, ("NLRA"), due to the primary jurisdiction of the NLRB to adjudicate labor-related disputes that fall within the scope of the Act. Congress prescribed a procedure and provided the NLRB with the authority to interpret and apply the substantive law in matters within the purview of the Act. *See Garner v. Teamsters, Chauffeurs and Helpers Local Union, No. 776*, 346 U.S. 485, 490, 74 S.Ct. 161, 165, 98 L.Ed. 228 (1953). State law is preempted by the NLRA where the activities at issue arguably are protected or prohibited by § 7 or § 8 of the Act. *San Diego Building Trades Council, etc. v. Garmon*, 359 U.S. 236, 244–45, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775 (1959).

Section 7 of the NLRA protects employees' rights which include the right to self-organization, to bargain collectively, and to engage in "other concerted activities for the purpose of collective bargaining or other mutual aid or protection". *See* 29 U.S.C.

§ 157. Section 8 regulates activities which constitute unfair labor practices. *See* 29 U.S.C. § 158. The Supreme Court in *Local 24, International Brotherhood of Teamsters, etc. v. Oliver*, 358 U.S. 283, 294–96, 79 S.Ct. 297, 303–05, 3 L.Ed.2d 312 (1959), held that the Ohio antitrust statute, as applied to a disputed wage protection clause within a collective bargaining agreement, was preempted by federal labor policy. Noting that the contract provision in question clearly pertained to wages, the Court in *Oliver* stated that the employees' bargaining on this subject through their representative (the union) was a right of employees protected under § 7 of the NLRA. *Id.* at 295, 79 S.Ct. at 304. In *Garmon*, 359 U.S. at 245–46, 79 S.Ct. at 779–80, the Supreme Court assumed, as had the state courts, that the conduct of the unions in peacefully picketing the respondents' place of business in order to compel the execution of an agreement to retain in their employ only those workers who were already members of the unions or who applied for membership within thirty days, constituted an unfair labor practice. However, the Court held that the California courts lacked the power to award damages against the unions for such conduct, because the matter was within the exclusive competence of the NLRB. *Id.* at 245, 79 S.Ct. at 779.

In the instant case, the activities in question are arguably subject to § 7 of the NLRA. As a general matter, "area standards" picketing is conduct protected under § 7 of the Act. *See, e.g., Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters*, 436 U.S. 180, 206 n. 42, 98 S.Ct. 1745, 1762 n. 42, 56 L.Ed.2d 209 (1978).[3] Although this Court has noted, with respect to the federal antitrust claims, that the plaintiff has pled facts which cast doubt upon the defendants' contention that the picketing of the plaintiff stores was area standards picketing, the Court's finding that the plaintiffs have pled facts sufficient to avoid dismissal of their federal antitrust claims on the basis of the labor antitrust exemptions is not dispositive of the issue of the nature of the picketing conducted in this case. Since the nature of the picketing will be an issue material to resolution of the state law claims, however, and since the picketing involved in this case is at least "arguably protected" under § 7, the plaintiffs' state law claims are preempted by the NLRA, under the reasoning in the cases cited above, unless the types of state law claims raised herein fall within an exception to the *Garmon* preemption doctrine.

In cases in which the conduct that is the subject matter of the litigation is arguably protected by or prohibited by § 7 or § 8 of the Act, the States must yield their jurisdiction to the NLRB unless the regulated conduct "touche[s] interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [it cannot be inferred] that Congress had deprived the States of the power to act." *Garmon*, 359 U.S. at 243–44, 79 S.Ct. at 778–79. *In Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 62, 86 S.Ct. 657, 662, 15 L.Ed.2d 582 (1966), the Supreme Court concluded that a State's concern with providing a remedy for malicious libel is "so deeply rooted in local feeling and responsibility" that it fit within the above-noted exception under *Garmon*. Despite the congressional intent expressed in the NLRA to promote vigorous debate on issues dividing labor and management, the Supreme Court found that permitting a State remedy to an individual for "malicious" libel, (i.e.—statements that meet the test for "malice" set forth in *New York Times v. Sullivan*, 376

---

**3.** The Court notes that an employer has no way to bring before the NLRB issues concerning whether union activity is protected under § 7. However, absent from the complaint in this case is an allegation that the plaintiff stores requested that the union picketers leave the area in front of their stores, thus affording Local 880 the opportunity to bring the issue of the lawfulness of the picketing under the NLRA before the National Labor Relations Board by filing an unfair labor practice charge against the plaintiff stores. *Cf. Sears*, 436 U.S. at 201–03, 98 S.Ct. at 1759–61 (stating that primary jurisdiction rationale does not extend to cases in which an employer has no acceptable method of invoking or inducing the Union to invoke, the jurisdiction of the NLRB).

U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)), would not interfere with the NLRB's jurisdiction over the merits of the labor controversy. *See Linn,* 383 U.S. at 63–65, 86 S.Ct. at 663–64.

The plaintiffs' state law causes of action in this case are not premised upon conduct from which Ohio has an overriding interest in protecting its residents. *Cf. Farmer v. United Brotherhood of Carpenters and Joiners,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (intentional infliction of emotional distress); *United Automobile Workers v. Russell,* 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958) (violence). State antitrust laws, although of general applicability rather than aimed at labor-management relations, are not usually considered to be laws that avoid the preemptive force of the federal labor laws. *See, e.g., Sears, Roebuck & Co.,* 436 U.S. at 193 n. 23, 98 S.Ct. at 1756 n. 23 (citation omitted). Claims of tortious interference with business relations do not fall within the *Garmon* exception for regulated conduct which is "deeply rooted in local feeling and responsibility." Further, the facts pertaining to a tortious interference claim generally are closely related to the labor dispute involved in the case. *See Falls Stamping & Welding Co. v. International Union, United Automobile Workers, etc.,* 744 F.2d 521, 524–25 (6th Cir.1984); *In re Sewell,* 690 F.2d 403, 408–09 (4th Cir.1982); *Palm Beach Co. v. Journeyman's and Production Allied Services, etc.,* 519 F.Supp. 705 (S.D.N.Y.1981).

In conclusion, as the activities of which the plaintiffs complain are arguably protected by § 7 of the NLRA, and the state law claims which the plaintiffs seek to assert do not fall within an exception to the preemption doctrine, the Court finds that the defendants' motion to dismiss the plaintiffs' state law claims based on federal labor law preemption is well-taken. The Court recognizes that the explication of the preemption doctrine in *Garmon* and the later cases is anything but clear. Nevertheless, it appears to this Court that the stronger argument under the applicable case law is in favor of preemption of the State law claims asserted by the plaintiffs

in this case. The Court orders that the defendants' motion to dismiss the plaintiffs' state law claims is GRANTED; and Counts VII, VIII, IX, X, and XI of the plaintiffs' complaint are DISMISSED.

## V.

### Individual Defendants Are Not Liable

■ Plaintiffs assert that the individual defendants can be held liable for their participation in the alleged conduct. *See* plaintiffs' brief in opposition to defendants' motion to dismiss, at 31. Defendants assert that the plaintiffs complaint fails to state a claim against the individual defendants and, therefore, the individual defendants cannot be held personally liable for the alleged conduct. *See* defendants' motion to dismiss and/or join parties and memorandum in support, at 33. This Court finds that the individual defendants cannot be held personally liable for the alleged conduct.

■ It is well settled that a corporation's agents and officers may be held personally liable if they participate in or authorize corporate activities that violate antitrust laws. An allegation of individual liability must be founded on specific acts. Antitrust decisions addressing issues of individual liability stress that in order for personal liability to attach there must be a showing of the individual's participation in the alleged conduct. Participation may be found in direct action, knowing approval or ratification of the alleged wrongful acts. However, where a claim for individual liability is based on an officer or agent's approval or ratification of acts or conduct, such acts or conduct must be inherently unlawful. *See Murphy Tugboat v. Shipowners and Merchants Towboat,* 467 F.Supp. 841, 852–853 (N.D.Cal.1979).

The facts alleged in the instant case do not meet the standard for attaching personal liability to the named individual defendants. Plaintiffs allege that each individual knowingly and actively participated in the alleged conduct. *See* complaint, ¶ 12. Plaintiffs name five individual defendants and two unidentified individual defendants

as officers, members or agents of the defendant union. *See* complaint, ¶'s 14, 15, 16, 17, 18 and 19. However, plaintiffs fail to specify the individual defendants further in their allegations. The complaint fails to specify which of the individual defendants participated in each alleged wrongful act and further, plaintiffs fail to state the specific nature of the individual defendants' roles in the alleged conduct. Absent a showing of specific allegations of the individual defendants acts and conduct in support of plaintiffs' claims against the individual defendants those claims cannot stand. Accordingly, plaintiffs' claims against the five individual named defendants and the two unidentified individual defendants are dismissed.

## VI.

### *Joinder of Co–Conspirator Supermarkets*

■ The parties, as well as the non-party co-conspirator union supermarkets through an amicus curiae brief, have thoroughly briefed the issue of whether the co-conspirator unionized supermarkets must be joined as defendants pursuant to Fed.R. Civ.P. 19. The Court has considered these arguments and the case law cited in support of them and finds that the co-conspirator unionized supermarkets are not parties required to be joined as defined by Fed.R. Civ.P. 19. First, the plaintiffs may be accorded the full relief they seek in the absence of the co-conspirator supermarkets. Moreover, the defendant union in this action has an interest in defending the collective bargaining agreement at issue similar to that of the co-conspirator unionized supermarkets such that its interests are protected. The co-conspirator unionized supermarkets may intervene if it is their position that their interests are insufficiently represented. Finally, the union is not subject to inconsistent obligations if the provisions in the collective bargaining agreement are found unlawful. The contract specifically provides that in the event the union is prevented from picketing by law, the employer may not exercise the rights granted in Section 1(a). Thus, no inconsistent obligations would arise on the part of the union.

The motion of Local Union 880 to join the co-conspirator unionized supermarkets is hereby DENIED.

IT IS SO ORDERED.

## ORDER

For the reasons set forth in the Memorandum of Opinion issued herewith, the Court orders that the defendants' motion to dismiss and/or join parties is GRANTED in part and DENIED in part; the motion to join the co-conspirator unionized supermarkets is DENIED; the motion to dismiss is DENIED as to the plaintiffs' federal antitrust claims; the motion to dismiss is GRANTED with regard to the plaintiffs' state law claims, and accordingly, Counts VII, VIII, IX, X and XI of the complaint are DISMISSED; and the motion to dismiss as it pertains to the individual defendants is GRANTED, and the plaintiffs' claims against the five individual named defendants and the two unidentified individual defendants are DISMISSED.

IT IS SO ORDERED.